P.D.B

1047-15

IN THE Court

of Criminal Appeals for

THE Fourteent District of Texas

ORIGINAL

P.D.R No. 1047-15

Court of Appeal Judicial District

Court

of Harris County TEXAS

Trial Court Case Number 1367706

FILED IN
COURT OF CRIMINAL APPEALS

OCT 09 2015

Abel Acosta, Clerk

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 09 2015

Abel Acosta, Clerk

No. 14-14-00314-CR

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT HOUSTON

CAMERON LAQuincy Gold
                              Appellant,

v

The State of Texas    Appellee.

Appealed from the 262nd Judicial District
of Harris county Texas
Trial Court Number ~~~~~~~1367706

Brief of Appellant

TO THE Honorable Justices of said court:

COMES NOW, CAMERON LaQuincy Gold, Appellant by And
~~Todo~~ ~~that~~ through his attorney of record on appeal, Joseph Salhab
and Respectfully submits this brief on appeal

Statement of the Case

This is An appeal From CAMERON LaQuincy Gold conviction
by a Jury of the offense of murder a Felony. Tex. Pen. Code §
19.0 Q Crp. 85 RR: V. 3. P. D. The court assessed punish-
ment at Life Inprisonment CRP. 92. mr Gold gave timely
written notice of Appeal. CR P. 93 The trial Court

(P51)

CERtified Mr. Gold right to Appeal. CRP 95

# ISSUE PRESENTED

Whether The court erred by excluding Gold Testimony regarding Arceneaux's character For violence or aggression to Show Gold State of mind in his self-defence.

## Statement of facts

This case is about Cameron LaQuincy Gold. On November 12, 2012 Gold was arrested By Baytown Police. On Febuary 11, 2013 he was indieted by a Grand Jury in Harris County and Charge with the muder of Robert Arceneaux. [CRP.17]

The charge alleged by the State that Gold Fueled by anger at the death of his Friend Kevin St. Romain, Shot and killed Robert Arceneaux [RR; V3 P12] ON The Night before the shooting, Gold had been at a gathering where an individual named Danny Bruno assalted St. Romain with a baseball bat. St. Romain Subsequently died From his injuries. [RR; V P.11] Both Robert Arceneaux and Christopher Walder Gold cousins, WERE present at the time of the attack, and Gold stated That they aided in the attack on St. Romain [RR; V4. P99]

Gold testified that AFteR the assault he received. threating phone CAlls From individuals who WERE present during that attack, and as A result, Gold procured a weapon For his own protction. [RR:V4. p.114-114] On November 10.2012 Gold WENT to the APARTMENT complex WHERE WAS staying with family. [RR.V4.114.] The state Alleged during trial That Gold went to the complex with the intention of Shoot Robert Arceneaux and Christopher WAlder because they where present on the night that St.Romain was attacked [RR:V3p.29] Gold testified, however, that he had No intention of shooting anyone when he WENT To the apARTMENT complex. He stated when He showed up at The complex, where he WAs living with his FAmily, he WAs already NEvous because of the threats that had been made to him after the attack on his Friend, St. Romain. [RR.V4.P116]

He Arrived at the complex WHERE, as Gold testified he SAW Arceneaux, WAlder and Taylor, Gold Uncle, standing outside. Gold stated he saw Arceneaux, who Gold beleived had Already access to guns reach for something. IN order to protect himself himself from the percieved threat, Gold began to Fire his own WEApoN, hitting Arceneaux, WAlder and Taylor. [RR:V4.116

(3)

ARCENEAUX Later died from his injuries. During trial, defence counsel directly examined Gold. [RR:V4.P.80] Over the course of examination, Gold discussed fear that his life was in danger, specifically from Walder(C)) and Arceneaux (TRAIN) [RR:#V4 P.116] Defense counsel's attempts to ask about threats made to Gold were objected to by state, and sustained by the Court. [RR:V4P118] Defense counsel also attempts to discuss Gold fear of Arceneaux with respect to specific incidence of violent conduct and previouse criminal history. [RR:V4P112] Again, the State objected and the Court sustained the objection.

During the Cross-examination, Gold acknowledge that his testimony regarding self-defence was disputed by the six eye witnesses that testified at trial [RR:V4.P132 Gold admitted that he never claimed self-defence in his statement to homicide detectives. [RR:V4.P135-136]

On April 2, 2014, the jury found Gold guilty of murder as chared in the inditment. [CRP.7] He was sentenced to Life imprisonment in custody of the Texas Department of Criminal Justice [CRP.92]

Gold timely filed Notice of Appeal on April2, 2014 in accordance with 25.2.(a)(2) of Texas Rule of Appeallate Procedure [CRP.96]

## Summary of Argument

Trial court erred by exculding Gold testimony regarding Arceneaux's Character for violence of aggression to show Gold state of mind in his claim of self-defense. Texas Code of Criminal Procedures allows for "testimony as to all relevent

(4)

Fact and circumstances surrounding the killing and and relationship exising between the accused and the deceased." Tex. Crim. Pro. 38.36. Evidence as to Gold knowledge of Arceneaux's criminal history and violent conduct is admissible to show that Gold perception of the danger was reasonable, showing his state of mind in his claim of self-defense.

## ARGUMENTS and AUTHORITIES

### Standard of Review

A trial court's admission or exclusion of evidence is reveiwed under an abuse of discretion standard Montgomery v. State 810 S.W. 2d 372, 379-80 (Tex. Crim. App. 1990) An abuse of discretion occurs when the trial court act arbitrarily or unreasonable, with out reference to guiding rules and principles. Id, At 380. In other words, an abuse of discretion occurs only when the trial court's decision is so wrong as to lie outside that zone within which reasonable person might disagree. Id. The appellate court is to afford almost total deference to the trial court's determination of the historical fact and reveiw de novo the court's application of the law of Search and seizure to those Facts. State v. Ross 32 S.W. 3d. 856 (Tex Crim. App. 2000) (citing Carmouche v State 10 S.W. 3d. 323 (TEX. Crim. App 2000) and Guzman v. State, 955 S.W. 2d 85 (Tex Crim. App. 1997).

1. THE Court deprived the jury of relevant and admissible evidence when it disAllowed Mr. Gold's testimony as to ARCENEAUX's Violent History.

(5)

Gold submits that the Court erred in preventing Gold from testifying regarding specific threats that were made by the decedent Arceneaux to Gold whether Gold had knowledge of history involving violent conduct by Arceneaux. Such evidence is admissible to show that a defendant claiming self-defense was aware of the decedent's violent tendencies and that his perception of danger was reasonable. Tex. Crim. Pro. 38.36, Tex. R. of Evid. (404A)(2). Artical 38.36 of the Texas Code of Criminal Procedure provides that in all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstance surronding the killing and previous relationship exising between the acused and the deceased. Tex. Crim. Pro. 38.36. Further when a defendant in a murder prosecution raises the issue of self-defence, he may introduce evidence of the deceased's violent character Tex. R. Evid. (404(a)(2) Torres v. State sw. 891, 894 (Tex Crim. App. 2003) When a defendant is charged with an assaultive offense the defendant may offer evidence of the victim charactor under either of two theories. Ex Parte Miller, 330 sw. 3d 610, 618 (Tex. Crim App 2009) Under the first theory, "communicted charter," the defendant is aware of the victim's violent tendencies and perceives a danger posed by the victim regardless of whether the danger is real or not. Id. The defendant is not trying to prove that the victim is actually violent rather, he is proving his own

(6)

Self-defense state of mind and the reasonableness of that state of mind. Id at 619. The second theory, to show that the victim was the first aggressor, is called "uncommunicated character" because it does not matter if the defendant was aware of the victim's violent character. Id. A defendant in a murder case who raises the issue of self-defence may offer evidence of the victims character traits for violence to show that the victim was, in fact, the first aggressor. Tex. R. Evid 404(a)(2) Torres v. State 71 SW 3d at 460. Gold Claim of self-defence rested on the first theory; that Arceneaux's pior threats to Gold and Gold awareness of Arceneaux's violent tendencies support Gold claim that, veiwed from Golds stand point at the time of the offense, Gold perception that ~~obstructed~~ ~~time~~ ~~by~~ ~~time~~ his life was in danger was reasonable and that his use of deadly force was immediately ~~not~~ NECESSARY. See Tex. Pen. § 9.31, 9.32

During his testimony on direct examination regarding St. Romains death, Gold testified that Arceneaux, Walder and Malcom participated by preventing Gold from intervening in the assualt of His Freind. RR.V.4, P.99. Gold testified that he later received threating phone calls but when asked about the NATURE of the threats the state's hearsay objection was sustained by the court. RR:V.4, P111-112. The court sustained the state's objection to "Relevanc" when Gold was asked

(7)

Whether Arceneax had been ~~convicted~~ convicted of any violent crimes. RR:V4, P.112 The trial court erred when it prevented Gold from testifying about what was said and presumably, by ~~who~~ whom, when Gold was threatened. Gold concedes that defendant may not offer evidence of victim's prior specific act of violence to prove the victim's voilent charactor to show that the victim acted in conformity with that character at the time of the charged assaultive conduct. See Tex. R. Evid. 404(b)(2); Miller, 330 S.W. at 619. However, a victim's prior acts of violence may be Admissible if offered for a non-charactor purpose, such as the victim's such as the victims intent or motive for an attack of the defendant. See Tex. R. Evid. 404(b) Miller, ~~~~ 330 S.W. 3d At 620. The Court of Criminal Appeals has held that A victim's ~~~~ specific acts of violence may be introduced to ~~demonstrate~~ the Resonableness of the defenant's fear of danger, or to show that the victim was the first aggressor Torres, 117 S.W. 3d at 894; see also Hays v State, 124 S.W. 3d 784, 785 Tex. App. Houston [1st Dist.] 2003, aff'd 161 S.W. 3d 507 (Tex Crim. App. 2005) In those instances, there must be some evidence of violent or aggressive act by the victim that tends to raise the issue of self-defence that the specific act of violence May explain. Torres 117 S.W. 3d At 895.

(9)

Gold submits that prior threats by Arceneaux and criminal history of violence were relevant and admissable as evidence for the jury to consider on the reasonableness of his fear of danger in his claim of self-defense. Gold contends that prior threats were not hearsay, but were admissible under Texas Rule of Evidence 803(3) as an exception to show then-existing state of mind of the declarant Arceneaux toward Gold. Tex R. Evid. 803(3); Saldivar v. State 980 S.W.2d 475, 495 (Tex App- Houston [14th Dist], 1998 pet. ref'd) Gold Submits that the court's Ruling prohibiting his testomy regarding prior specific threats, acts of violence, and, his awareness of criminal history involving act of violence were error and that Gold was harmed. The Excluded evidence was crucial to the jury determination as to whether Gold acted in self-defense when he shot Robert Arceneaux. Gold contends that the excluded testimony was essential to the jury's determination of whether Gold acted under the objectively reasonable beleif that his life was in danger and that his use of deadly force was justified under the circumstanes. This deprived the jury of evidence

(9)

NECESSARY to effectively consider the Court's charge of Self defence. In the case of People v. Goetz 68 NY 2d 96, 497 NE 2d 41 (1986) The defendant was about to be robbed by 4 unknown people and they did not harm him in any Fashion but, he had be robbed before so his belief WAS that it would happen again be cause, subways were Know places for robbers and Goetz knew this. By him having a gun WAS not his intention to shot anyone but simply protect himself if the time came. As Gold did in the event of Shooting Robert Arceneaux, Christopher Walder and Marcus Taylor. Also My LAWYER WAS ineffective as to asking question to the States witness.

None of the state's witness said I was fuel by anger or even heard of me stating I would in no way harm them The Counselor for the state didn't ask the witnesses about it other. It was all speculation by the victims and The witnesses. None of the witnesses story even were to point to nothing more then (Involentary Manslater) because of The evidence of Gun powder on the victim and the witnesses that left the crime scene and came back and were not arrested for contamidating a

(10)

or Leaving a crime scene.

## Conclusion and Prayer

Wherefore, Premises considered, Appellant has shown that he was deprived of a opportunity to present admissible relevant and admissible evidence at trial, causing prejudice to Appellant in the presentation of his defense, and respectfully prays that this Honorable Court sustain his point of error, reverse his conviction, and remand for a New trial.

Respectfully Sumitted

Cameron Gold TDC #1921117
McConnell Unit
Beeville, Tx. 78102

( 11 )

**Affirmed and Memorandum Opinion filed July 21, 2015.**



In The

## Fourteenth Court of Appeals

---

### NO. 14-14-00314-CR

---

### CAMERON LAQUINCY GOLD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1367706**

---

## MEMORANDUM OPINION

Appellant Cameron Laquincy Gold appeals his conviction for murder. *See* Tex. Penal Code Ann. § 19.02 (West 2011). In a single issue appellant argues the trial court erred in excluding appellant's testimony regarding the complainant's character for violence or aggression to show appellant's state of mind in his claim of self-defense. We affirm.

## BACKGROUND

Robert Arceneaux, the decedent, is the stepson of Marcus Taylor. Christopher Walder and appellant are Taylor's nephews. On the date of the offense, Arceneaux, Taylor and Walder were sitting on the porch of Taylor's apartment drinking beer. Appellant appeared from the side of the apartment building and began shooting. Taylor testified that appellant shot Arceneaux first, then shot Walder and Taylor. Arceneaux fell after the first shot, and appellant stood over him and shot him two more times before he began shooting Walder. Taylor testified that after appellant shot them he walked away saying, "that's the way a 'G' do it, meaning gangster." Taylor testified that none of the three victims had weapons with them. Lonnie Gold, appellant's uncle, also testified that he saw appellant shoot the three men.

Three other witnesses who were not shot testified that appellant shot Arceneaux, Walder, and Taylor with no provocation. They further testified that when appellant learned that his friend Kevin St. Romain had died the night before from a blow to the head allegedly by Danny Bruno, appellant believed that Arceneaux, Walder, and Taylor aided Bruno in the attack on St. Romain. Appellant was angry and threatened to "kill family and all." The three witnesses understood this statement to be a threat against them and their families.

Appellant testified and described the events from both the shooting and the St. Romain/Bruno fight differently than the State's witnesses. With regard to the fight, appellant testified that the night that St. Romain was killed, Arceneaux, Walder, and Taylor were present and carrying weapons. With regard to the shooting the next day, when appellant walked to the apartment complex, he testified that Arceneaux, Walder, and Taylor were looking at him in a threatening manner. Appellant left the apartment complex, and walked to his aunt's house. Before walking back to the apartment complex, appellant retrieved his gun from the trunk of his car because he was afraid he

2

would be harmed at the apartment complex by Arceneaux, Walder, and/or Taylor. Appellant began talking with Taylor on the porch when Arceneaux and Walder startled him. At that time he pulled out his gun and "just started shooting." Appellant did not see a weapon before he started shooting. Two days later appellant turned himself into the police.

The jury convicted appellant of murder and sentenced him to life in prison.

## EXCLUSION OF EVIDENCE

In his sole issue on appeal, appellant argues the trial court deprived the jury of relevant and admissible evidence when it disallowed appellant's testimony as to Arceneaux's violent history. On direct examination, appellant testified as follows:

Q. You were getting threats?

A. Yeah, I was.

\* \* \* \* \*

Q. (BY [defense counsel]) Did those threats concern what had happened the night before at the Fox Apartments?

[The prosecutor]: Objection, hearsay.

THE COURT: That's sustained.

\* \* \* \* \*

Q. Did you know anything about violent acts Robert Arceneaux committed?

A. Some of them, not all of them. I mean, he was just like all the other little bad kids running around.

Q. Well, what did you know?

A. I just know he was hanging around some of the young gang members that I was friends and cousins, you know, some of my partners son's and little cousins, that's how I knew he was getting in a lot of drama.

Q. Is that the Bloods we're talking about?

A. Yes, sir.

3

Q. Did you know whether or not he had been convicted of any violent crime?

[The prosecutor]: Objection, relevance.

THE COURT: Sustained.

\* \* \* \* \*

Q. (BY [defense counsel]) Were you aware of whether or not [Arceneaux] had been convicted of any at the time —

[The prosecutor]: Objection, relevance.

THE COURT: As to the form of that question, your objection is sustained.

Q. (BY [defense counsel]) Were you aware of whether or not [Arceneaux] had been to the penitentiary?

[The prosecutor]: Objection.

THE COURT: Sustained.

Q. (BY [defense counsel]) Were you aware of any violent acts that [Arceneaux] had committed in the past?

[The prosecutor]: Objection, asked and answered.

THE COURT: Overruled.

A. Yes, sir.

Q. (BY [defense counsel]) What were those acts?

A. Which one, just [Arceneaux] or both of them, him and [Walder]?

Q. Well, let's go [Arceneaux] first?

A. I mean, growing up around what we were growing up around, we did a lot of fighting. Occasionally, you know, growing up, I mean, you know, pistol cross your hands.

[The prosecutor]: Objection, relevance.

THE COURT: Sustained.

Appellant contends that the trial court erred in preventing appellant from testifying regarding specific threats that were made by Arceneaux to appellant and whether appellant had knowledge of Arceneux's criminal history.

To preserve error regarding a trial court's decision to exclude evidence, the

4

complaining party must comply with Rule of Evidence 103 by making an offer of proof that sets forth the substance of the proffered evidence. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009); Tex. R. Evid. 103(a)(2); *Watts v. State*, 371 S.W.3d 448, 464 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Under Rule 103, a party may not predicate error on a ruling that excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by offer of proof or was apparent from the context of the questions asked. Tex. R. Evid. 103(a)(2).

The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. *Mays*, 285 S.W.3d at 890. A secondary purpose is to permit the trial court to reconsider its ruling in light of the actual evidence. *Id.*; *see also Montgomery v. State*, 383 S.W.3d 722, 726 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Absent a showing of what such testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is presented for review. *Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).

The record in this case does not indicate what the excluded testimony would have been. Appellant did not make an offer of proof as to what threats or criminal history he would have testified to had the prosecutor's objections not been sustained. Accordingly, appellant has failed to preserve error for review on appeal. *See Montgomery*, 383 S.W.3d at 726–27. We overrule appellant's sole issue.

We affirm the trial court's judgment.

/s/ John Donovan
   Justice

Panel consists of Justices Boyce, McCally, and Donovan.
Do Not Publish — Tex. R. App. P. 47.2(b).

5